## STATE OF HAWAII, Plaintiff-Appellee *v.* JOHN S. BROAD, Defendant-Appellant

### NO. 6468

### OCTOBER 2, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ., AND
RETIRED JUSTICES MARUMOTO AND KOBAYASHI
ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* Defendant-appellant John S. Broad appeals from his conviction for open lewdness in violation of HRS § 712-1217 (1976).[1] Appellant admitted to committing a lewd act. The sole issue here is whether this offense was committed in a public place where it was likely to be observed by others.[2] We find that under the facts and circumstances of

---

[1] § 712-1217 Open Lewdness. (1) A person commits the offense of open lewdness if in a public place he does any lewd act which is likely to be observed by others who would be affronted or alarmed.

(2) Open lewdness is a petty misdemeanor.

[2] Appellant also raises on appeal the issue that the prosecution had not established the requisite reckless intent required for a conviction under HRS § 712-1217. However, because we decide this case on other grounds, we need not reach this issue.

this case appellant's lewd act was not committed in a public place and accordingly we reverse his judgment of conviction.

The only testimony at trial was that offered by the two arresting officers. The officers first observed appellant on Maunakea Street at about 3:00 a.m. on November 14, 1976, a Sunday morning. The two officers had been patrolling the downtown area when they saw appellant and a number of other individuals flagging vehicles to the side of the street. The officers watched appellant as he stopped an automobile and after a brief conversation with its driver entered the vehicle. The officers followed the car to Waikahalulu Lane where they found it parked on top of a hill, in a turnaround area opposite a residence at Waikahalulu Lane. It was then approximately 3:30 a.m. and the car was stationed between two street lights. There were no other lights from any of the nearby houses nor were any inhabitants awake at this time. The officers parked their cars behind appellant's car and got out. As they approached his car at a point about five to six feet away they saw appellant's head in the driver's lap moving up and down. Believing some form of sexual conduct was taking place, one of the officers turned on his flashlight, directed it into the car, and observed appellant and the driver engaged in the act of fellatio. At this point the officers arrested appellant, charging him with open lewdness in violation of HRS § 712-1217.

At the close of the prosecution's case, appellant's counsel moved for a judgment of acquittal, which was denied by the district court judge. Appellant did not present any witnesses, and after a brief recess the judge found him guilty as charged.

On appeal, appellant first argues that the trial court erred in denying his motion for judgment of acquittal at the close of the prosecution's case. Rule 29(a) of the Hawaii Rules of Criminal Procedure (1976), Motion for Judgment of Acquittal, states in relevant part:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence

is insufficient to sustain a conviction of such offense or offenses.

The rule requires the trial court judge either upon a motion of a defendant or of its own motion to enter a judgment of acquittal if at the end of the prosecution's case there is not sufficient evidence to support a prima facie case. This court has oft-before stated that the standard for reviewing a motion for judgment of acquittal is whether the prosecution's evidence is such that "a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *State v. Rocker,* 52 Haw. 336, 346, 475 P.2d 684, 690 (1970).

Appellant's motion for a judgment of acquittal was based on the prosecution's failure to produce sufficient evidence that appellant's act on Waikahalulu Lane occurred in a public place where he was likely to be seen by casual observers. This point constituted a crucial element of the prosecution's prima facie case and at this stage of the proceedings had not been established.

In *Rocker* this court had occasion to interpret HRS § 727-1,[3] the precursor of HRS § 712-1217. In that case, police

---

[3] § 727-1 Defined. The offense of common nuisance is the endangering of the public personal safety or health, or doing, causing or promoting, maintaining or continuing what is offensive, or annoying and vexatious, or plainly hurtful to the public; *or it is a public outrage against common decency or common morality;* or tends plainly and directly to the corruption of the morals, honesty, and good habits of the people; the same being without authority or justification by law:

As for example, carrying on a trade, manufacture, or business in places so situated that others indiscriminately, who reside in the vicinity, or pass in a highway or public place, or resort to a schoolhouse, meetinghouse, or any other place of legal and usual resort or assembly, are liable to be thereby injured, annoyed, disturbed, or endangered by deleterious exhalations, noisome vapors, hideous, alarming, or disgusting sights, intolerable noise, or otherwise;

Spreading or endangering the spreading of smallpox, or other infectious disease; carrying an infected person, or causing him to pass through a frequented street; opening a hospital or pesthouse as to endanger neighbors or the passerby in a frequented street, or otherwise;

Making or storing gunpowder in or near a populous or public or frequented place, without authority therefor, or otherwise making or storing the same contrary to law;

Blasting with excessive charge of giant powder or other explosives;

had arrested defendants-appellants for nude sunbathing at Puu Olai Beach on Maui following a citizen complaint. The evidence offered at the *Rocker* trial indicated that about twenty-five persons visited Puu Olai beach every two months and that it was a favorite location for fishermen to cast and throw fish nets. Although the beach was isolated by a hill and ledge, away from the view of the public road, it was accessible by a well-worn path. Appellants were charged under HRS § 727-1 which we found to proscribe offenses constituting common nuisances including "indecent exposure." The elements of indecent exposure while not specifically set out in the statute were: (1) that defendant expose himself, (2) in a public place where he may be seen by others, and (3) under circumstances that a trier of fact could infer a general intent of the defendant to offend the community's common sense of decency, propriety, and morality. We defined the public place element as public "if the exposure is such that it is likely to be seen by a number of casual observers." *Id.* at 341, 475 P.2d at 687.

What constitutes a public place depends upon the circumstances of the case.

Whether or not the place is owned by the State or whether or not the accused believes he is sunbathing in the nude in a remote area does not determine whether the place is "public" or "private". Each case must be decided upon its own facts; and the trier of fact is justified in finding the place public if the exposure is such that it is likely to be seen by a number of casual observers.

---

Making loud and troublesome noises by night;
Keeping animals that disturb the neighborhood by night;
Permitting ferocious or dangerous animals to go abroad;
Keeping a bawdy house;
*Open lewdness or lascivious behavior, or indecent exposure;*
Keeping a common gambling house;
Keeping a disorderly house to the public disturbance and annoyance;
Selling, dealing in, having in possession, or using sneezing powder or any similar substance other than snuff. (Emphasis added)

*Id.* (citations omitted).[4]

    The public place element of HRS § 727-1 is the same element as in the statute's successor — HRS § 712-1217. Thus the definition of public place in *Rocker* is applicable here.[5] However, evidence presented in the case at hand

---

[4] *Cf. State v. J.O.*, 69 N.J. 574, 355 A.2d 195 (1976). That case involved facts similar to those here. Two adult males were found by the state police engaged in the act of fellatio in a parked vehicle stationed adjacent to the state highway and were charged under a New Jersey statute prohibiting both private and public lewdness. The state's supreme court reversed the convictions for private lewdness finding that a private act of exposure between consenting adults was not offensive to those present. HRS § 712-1217 specifically prohibits only open or public lewdness. However, the *J.O.* holding is instructive for the court suggested that it would adopt a standard for "public" similar to the one in *Rocker* had the charge been for public lewdness. The court stated:

> The point is that it [the acts] did not occur in their [the officers] presence. Nor did it occur under the circumstances in which the defendants could reasonably be deemed to have intended, or known, that their conduct was likely to be seen by the public. . . .

This approach parallels that adopted by the New Jersey Criminal Law Revision Commission. The proposed New Jersey Penal Code (Oct. 1971) defines an act of indecent exposure as one committed "under the circumstances in which [the actor] knows his conduct is likely to cause affront or alarm." § 2C:14-5. It is also noteworthy that the proposed New Jersey Penal Code, consistent with its approach to private sexual conduct, eliminates the offense of private lewdness. *See* Commentary, § 2C:34-1. Rather, the proposed Code confines its proscription to acts of open lewdness, which are defined as "any lewd act which [the actor] knows is likely to be observed by others who would be affronted or alarmed." § 2C:34-1

*Id.* at 196-197.

[5] The court in *People v. Baus*, 16 Ill. App.3d 136, 305 N.E.2d 592 (1973), addressed the "public place" issue directly. Defendant there was convicted under a state statute prohibiting public indecency in a "public place" which was defined as "any place where the conduct may reasonably be expected to be viewed by others." Ill. Rev. Stat. ch. 38 § 11-9(b). Defendant had committed oral sex behind a clump of bushes in a park one early morning. He and his friend were observed by the arresting officer who was patrolling the area in an automobile. The Appellate Court of Illinois for the First District affirmed defendant's conviction concluding that the fact that the act was committed in a public park on the morning of a bright, sunshiny day where people walked their dogs and jogged indicated that the act was committed in a place where there was "a high probability that deviate conduct would be viewed by other members of the public."

As in other states with similar statutes, the "public place" element of HRS § 712-1217 is determined by an objective standard. *Commonwealth v. Davidson*, 220 Pa. Super. Ct. 451, 289 A.2d 250 (1972); *see generally Byous v. State*, 121 Ga. App. 654, 175 S.E.2d 106 (1970); *Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244 (1976).

contrasts greatly with the evidence presented in *Rocker*. The evidence presented by the officers at trial revealed that no persons other than the police officers saw appellant. And they themselves would not have seen him had they not followed him from Maunakea Street. In *Rocker*, appellants were seen by other citizens who then telephoned the police. Here on the other hand, appellant's car was found parked on top of a hill turnaround in a dead end. Although the road was in a residential area, the sole evidence offered as to the nature of the neighborhood was that there was one house across the street. The house was dark: no evidence of any inhabitants asleep or awake was introduced. No evidence of any pedestrian or vehicular traffic on the lane was offered. Nor were the lights of appellant's car on. Although the car was parked between two street lights, the officers themselves admitted they used flashlights to witness appellant's specific acts. It was 3:30 a.m. on a Sunday morning, hardly an hour when people would be traversing the street whether it be a busy thoroughfare or deserted lane.[6] Under these facts and circumstances it was improbable that appellant's acts would be observed by members of the public. Thus, the district court erred in denying appellant's motion for a judgment of acquittal.

Reversed.

*Paul S. Aoki (Hare, Aoki & Chun* of counsel) for defendant-appellant.

*Duffy Mendonca,* Deputy Prosecuting Attorney, *(Roy K. S. Chang* on the brief) for plaintiff-appellee.

---

[6] In *People v. Legel,* 24 Ill. App.3d 554, 321 N.E.2d 164 (1974), the Appellate Court for the Second District of Illinois reviewed a conviction under a statute punishing "public indecency" and defined "public place" as "any place where the conduct may reasonably be expected to be viewed by others." The court in dicta cited from the Legislative Committee Comment on the statute:

It is the probability of public view that is crucial rather than the ownership or use of the particular real estate upon which the act occurs. For example, a person standing nude before a lighted window of his private apartment at night, adjacent to a well traveled public sidewalk would be, for purposes of this statute, in a public place. Contrariwise, a couple in a parked car on a *public right-of-way but in a lonely country lane might not be in a public place, depending upon the likelihood of others traversing this particular area at such hours.* (S.H.A. ch. 38 § 11-9, page 434) (Emphasis added)

*Id.* at 168.