912 P.2d 596

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**Don Lee WHITNEY, Defendant–Appellant.**

**No. 17378.**

Intermediate Court of Appeals of Hawai'i.

March 1, 1996.

Richard N. Wurdeman, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Lori W.L. Chang, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

On June 14, 1993, Defendant–Appellant Don Lee Whitney (Defendant) was convicted in a bench trial of violating Hawai'i Revised Statutes (HRS) § 712–1217 (1993), the "open lewdness" statute. HRS § 712–1217 states:

**Open lewdness.** (1) A person commits the offense of open lewdness if in a public place the person does any lewd act which is likely to be observed by others who would be affronted or alarmed.

(2) Open lewdness is a petty misdemeanor.

At trial, police officer Kevin Kobayashi (Officer Kobayashi) was the only witness. The following facts are adduced from his testimony. On April 15, 1993, Officer Kobayashi was assigned with twelve other officers to monitor complaints of "open lewdness" and other sexual activity at the Ala Moana Beach Park in Honolulu on the island of O'ahu. The officer was dressed in "plain clothes" and was acting in an undercover capacity. As part of his assignment, the officer entered the men's public rest room and shower area at about 10:20 p.m. There he observed Defendant standing on a bench in the men's shower area. Defendant was dressed in a shirt and blue jeans and had no towel with him. The officer looked at Defendant for approximately thirty seconds. Defendant then pulled his pants and underwear down to his knees and stroked his penis approximately twenty times. The officer had made one arrest for similar behavior prior to his contact with Defendant. The officer testified he was "affronted and alarmed" by Defendant's behavior. No one else was in the rest room and shower area. There were no "locking" doors to the rest room area. During this time, the public had access to the park, and members of the public were within the park. The officer motioned toward Defendant, indicating that Defendant should follow him outside. Defendant pulled up his

shorts and pants, stepped off the bench, and followed the officer. Once outside, Officer Kobayashi and another officer placed Defendant under arrest.

At the end of the officer's testimony, the defense moved for a judgment of acquittal. The court denied the motion. Defendant did not present any evidence.

## I.

On appeal, Defendant argues that (1) the State failed to prove that the offense was committed "in a public place" because Defendant's acts were not "likely to be observed by others who would be affronted or alarmed[,]" and (2) there was insufficient evidence to establish that Defendant acted "recklessly" with respect to the offense. We affirm.

## A.

In construing HRS § 712–1217, the Hawai'i Supreme Court adopted the definition of "public place" set forth in *State v. Rocker*, 52 Haw. 336, 475 P.2d 684 (1970) (construing the "common nuisance" offense in HRS § 727–1 (1968), the predecessor statute of HRS § 712–1217). *State v. Broad*, 61 Haw. 187, 600 P.2d 1379 (1979). In doing so, the court indicated that "the 'public place' element of HRS § 712–1217 is determined by an objective standard." *Id.* at 191 n. 5, 600 P.2d at 1382 n. 5 (citations omitted). What constitutes a "public place" depends upon the circumstances of each particular case. *Id.* at 190, 600 P.2d at 1381 (quoting *Rocker*, 52 Haw. at 341, 475 P.2d at 687). Thus, the fact that Defendant was in a male shower area does not in and of itself render the shower area non-public. Whether a place is owned by the State or whether the accused believes he or she is in a remote area is not dispositive of whether a particular place is deemed "public" or "private." *Id.* Rather, "the trier of fact is justified in finding the place public if the exposure is such that it is likely to be seen by a number of casual observers." *Id.*

Consequently, Defendant is incorrect in emphasizing the fact that Officer Kobayashi "was the only person in the rest room during the alleged offense and no [one] other than himself had witnessed [Defendant's] actions." To the contrary, such "exposure in a public place where it may be seen by others if they pass by is such as is contemplated by the statute even though it is actually seen by one person only." *Rocker*, 52 Haw. at 342, 475 P.2d at 689 (ellipses omitted) (quoting *Territory v. Martin*, 14 Haw. 304 (1902)). Hence, the fact that Officer Kobayashi was the only person who observed the alleged offense would not be determinative of whether the area concerned was "public" or "private."

The pertinent question is not whether Defendant's act was actually seen by a number of casual observers but whether it was "*likely* to be seen by a number of casual observers." *Broad*, 61 Haw. at 190, 600 P.2d at 1381 (quotation omitted). Here, the offense took place in a public rest room and shower area. A public rest room and shower area would be frequented by members of the public. The park was open for public use, and there were members of the public in the park at the time of Defendant's arrest. The room was freely accessible to the public, and the area was open to public use by males. According to Officer Kobayashi, there were no "locking" doors to the area. Defendant's act occurred under circumstances where anyone entering the rest room and shower area would have seen him. Defendant "could reasonably be deemed to have intended, or known, that [his] conduct was likely to be seen by [members of] the public." *Id.* at 191 n. 4, 600 P.2d at 1381 n. 4 (quoting *State v. J.O.*, 69 N.J. 574, 355 A.2d 195 (1976)). As a result, Defendant's act would have been open to view by a casual observer and not only to a person entering the rest room with the specific intent or calculated motivation of viewing or ferreting out the kind of activity in which Defendant was engaged. *See Broad, supra.*[1]

1. In *State v. Broad*, 61 Haw. 187, 192, 600 P.2d 1379, 1382 (1979), the court reversed the appellant's conviction for open lewdness, concluding that it was "improbable that appellant's acts would be observed by members of the public" under the following circumstances: only the police officers saw appellant after they had followed his car and found it parked on top of a hill in a dead end; although the car was parked in a residential area, there was only one house, which was "dark[;]" no evidence of any pedestrian or vehicular traffic was presented; the lights in

That the area was designated for use by males and that the act occurred in the late evening did not make the area "non-public," since the "public place" test only requires that the act is likely to be seen by casual "observers" without qualification as to the gender or ages of the "observers." Under these circumstances, Defendant's act occurred in a "public place" because it was likely to be seen by any number of casual observers.[2]

### B.

 Defendant further contends that the evidence was insufficient because Officer Kobayashi stated he was "surprised" rather than affronted and alarmed. On the contrary, Officer Kobayashi did, in fact, also testify that he was affronted and alarmed.[3] We reiterate, however, that whether Officer Kobayashi was personally affronted or alarmed is not dispositive because HRS § 712–1217 requires only that the act be one which is *"likely* to be observed by others who would be affronted and alarmed[,]" and not that there be proof that a particular person

was in fact affronted and alarmed. HRS § 712–1217 (emphasis added). Thus, while establishing probable cause to arrest requires a police officer to find from the facts and circumstances that a reasonably prudent person would believe that others "would be affronted and alarmed[,]" the arresting officer himself need not necessarily be affronted or alarmed. HRS § 712–1217; *see State v. Texeira,* 50 Haw. 138, 142, 433 P.2d 593, 597 (1967) ("Officers have probable cause to make an arrest when the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a [person] of reasonable caution in the belief that a crime was being committed") (citation and brackets omitted). In analogous circumstances, the Hawai'i Supreme Court has stated that "it is not necessary that annoyance to or injury of any one person be shown, for it is interference with the rights of the general public and not individuals which is the criterion...." *Rocker,* 52 Haw. at 342–43, 475 P.2d at 689 (citation omitted). For that reason, "[t]he fact that no one [may] testif[y] to

---

appellant's car were off; and the officers "admitted they used flashlights" to witness appellant and the driver of the car engaged in the act of fellatio.

2. While neither party refers us to the parallel provision of Hawai'i Revised Statutes (HRS) § 712–1217 (1993) in the Model Penal Code (MPC), we note that the offense of "open lewdness" in HRS § 712–1217 is substantially identical to its counterpart in the MPC. *Model Penal Code and Commentaries* § 251.1 at 448 (Official Draft and Revised Comments 1980). However, unlike the Hawai'i statute, the MPC version does not contain the "in a public place" element. MPC § 251.1 defines "open lewdness" as follows:

A person commits a petty misdemeanor if he does any lewd act which he knows is likely to be observed by others who would be affronted or alarmed.

*Id.*

MPC § 251.1 subsumes the "public place" element in the requirement that the act would likely be "observed by others who would be affronted or alarmed." The MPC

recasts this ["public"] element of the offense in terms of the known likelihood of observation by persons who would be affronted or alarmed. This formulation focuses attention directly on the essential harm at which this provision is aimed and is on that ground preferable to a statutory emphasis on whether the

lewd act occurs in a "public" place. *Many places that are public in a property sense may be extremely private in terms of the likelihood of casual observation.* Since the rationale of this provision is to prevent the open flouting of societal conventions, it should not condemn as debauchers of public morality persons who desire privacy and who take reasonable measures to secure it.

*Id.* at 452 (emphasis added).

The Hawai'i legislature apparently adopted the MPC "likelihood of observation" reformulation yet still retained the traditional "in a public place" requirement. Under our facts, we do not find the difference between HRS § 712–1217 and MPC § 251.1 significant. In the instant case, a rest room in a public park at night could arguably be a place that is "public in a property sense" but is "extremely private in terms of the likelihood of casual observation." *See id.* However, the park was still open for public use, there were members of the public in the park at the time of Defendant's act, the rest room and shower area were open and accessible to others, and Defendant's act took place in an area which was open to the view of anyone entering the area, and thus to the view of the casual observer.

3. Q [(PROSECUTOR)] Officer what was your reaction when you first observed this?

A [(OFFICER)] I was affronted and alarmed.

being shocked or offended" by a defendant's act "does not necessarily mean the exposure was not indecent[,]" because "[t]he common sense of the community, as well as the sense of decency, propriety, and morality, which most people entertain, must be the guide...." *Id.* at 343, 475 P.2d at 689.

In that connection, the Hawai'i Supreme Court, in interpreting HRS § 712–1217, has held that "the intentional exposure to public view of one's genitals is a lewd act within the proscription of the statute." *State v. Bull,* 61 Haw. 62, 63, 597 P.2d 10, 11 (1979). In defining "lewd," the supreme court approved of the following definition:

... (b) BASE, EVIL, WICKED ... 2. (a) sexually unchaste or licentious; DISSOLUTE, LASCIVIOUS (b) suggestive of or tending to moral looseness: inciting to sensual desire or imagination: INDECENT, OBSCENE, SALACIOUS.

*Id.* (citation omitted).

Under the definition adopted by our supreme court, a lewd act is one which by its nature would reasonably cause others to be affronted or alarmed.[4] Therefore, under the circumstances, we hold that the trier of fact, here the trial court, would be justified in finding Defendant's act occurred "in a public place and [was] likely to be observed by others who would be affronted or alarmed." HRS § 712–1217.

The formulation of the "public place" test in Hawai'i case law as a place where a lewd act is "likely to be seen by a number of casual observers" appears on the surface to be semantically related to the element in HRS § 712–1217 that the act is "likely to be observed by others who would be affronted

or alarmed." Together, these phrases amount to a requirement that ultimately, under HRS § 712–1217, there must be proof establishing beyond a reasonable doubt that the lewd act was likely to be seen by a number of casual observers who would be affronted or alarmed by the act.

## II.

Because no state of mind is prescribed in HRS § 712–1217, the state of mind required to support a conviction for "open lewdness" is an intentional, knowing, or reckless state of mind. HRS § 702–204 (1993).[5]

Defendant asserts that there was insufficient evidence to show that he acted recklessly because there was no evidence that he disregarded a substantial and unjustifiable risk that his act was likely to be observed by others who would be affronted or alarmed.

HRS § 702–206(3)(c) (1993) provides that "[a] person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result." Based on our discussion *supra,* there was sufficient evidence that Defendant disregarded a substantial and unjustifiable risk that his act was likely to be observed by others who would be affronted and alarmed. "Recklessness is the conscious disregard of a known risk." Commentary on HRS § 702–206 (1993). Defendant's actions took place after the officer entered the rest room area. Before committing the alleged offense, the officer and Defendant looked at each other. Defendant was plainly aware of the officer's

4. HRS § 712–1217 does not define the terms "affronted" or "alarmed." Nor are the terms defined in HRS § 712–1210 (1993), the pertinent definition section for "Offenses Related to Obscenity." Thus, we turn to other sources for guidance. " 'Resort to legal or other well accepted dictionaries is one way to determine the ordinary meaning of certain terms [not statutorily defined].' " *State v. Chen,* 77 Hawai'i 329, 337, 884 P.2d 392, 400 (App.), *cert. denied,* 77 Hawai'i 489, 889 P.2d 66 (1994) (quoting *Rivas v. State,* 787 S.W.2d 113, 115 (Tex.Ct.App.1990)). The term "affront" has been defined to mean "[a]n insult or indignity; assault, insolence." *Black's Law Dictionary* 60 (6th ed. 1990). "Alarm" means to disturb, excite, or "to strike

with fear[.]" *Merriam Webster's Collegiate Dictionary* 26 (10th ed. 1993).

5. HRS § 702–204 (1993) provides as follows:

**State of mind required.** Except as provided in section 702–212, a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense. When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly.

presence. By his act, Defendant knew the nature of his conduct. Defendant's act was "lewd" under the common definition adopted in our jurisdiction. *See Bull,* 61 Haw. at 63, 597 P.2d at 11. The rest room and shower area was open and accessible to others. From the surrounding circumstances, then, there can be no doubt that Defendant was conscious of his act and that he committed the act without any regard to the risk that his act was likely to cause others who might enter the area to be affronted or alarmed. That being so, we hold that there was sufficient evidence to support the conclusion that Defendant was aware of the substantial and unjustifiable risk that his act would result in the prohibited conduct.

### III.

Accordingly, the June 14, 1993 judgment is affirmed.