8 P.3d 1224

STATE of Hawai'i, Plaintiff-Appellee,

v.

Maiika K. KALAMA, Defendant-Appellant.

No. 22457.

Supreme Court of Hawai'i.

Sept. 29, 2000.

Shirley M. Kawamura, Deputy Public Defender, on the briefs, for defendant-appellant.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We hold that a conviction under Hawaiʻi Revised Statutes (HRS) § 707–734 (1993) for indecent exposure must be supported by proof that the defendant "intentionally," as defined in HRS § 702–206(1) (1993), exposed his or her genitals to another person under circumstances in which the other person was likely to be affronted. Under the stipulated facts of this case, the exposure by Defendant–Appellant Maiika K. Kalama (Defendant) of his genitals to a fellow nude sunbather was not "likely to cause affront," as required by HRS § 707–734. The district court of the first circuit (the court), however, convicted Defendant of violating HRS § 707–734 on the ground that other persons who could have been in the area would have been affronted by Defendant's conduct. We reverse Defendant's conviction because the court applied the wrong legal standard and because the evidence was insufficient to establish guilt under the legal standard that should have been applied.

I.

A.

On October 18, 1998, members of the Honolulu Police Department[1] arrested Defendant and Frances E. Milford, John P. Hartshorn, and Joseph E. Davis (collectively "codefendants") for sunbathing in the nude at Makaleha Beach Park on the North Shore of the Island of Oʻahu. The following pertinent facts were stipulated to at the combined hearing for arraignment, plea, and trial held on January 14, 1999.[2]

Defendant had traveled from his home in Waikīkī to the North Shore in order to sunbathe nude at the Makaleha Beach Park. Although the park is unimproved with none of the attributes of a beach park, it is public property under the jurisdiction and control of the City and County of Honolulu. There are numerous "entrances" into the beach park.

The area where Defendant was sunbathing is isolated and desolate. There were no complaining witnesses, and the record does not indicate how the police came to be on the beach[3] at the time of the incident. In the past, however, people had made complaints to the police and had asked the police to watch the area. The stipulated facts do not indicate the nature of the complaints made to police.

At the time of the arrest, "there was nobody there but six nude sunbathers and the police." Defendant was lying down on a beach towel, facing and conversing with Gor-

---

1. The number of police officers present at the time of the incident is not clear from the record.

2. At the hearing, the parties indicated that they were going to submit the police report into evidence and use what was in it as part of the stipulated facts. However, the court never formally received the police report into evidence, and the police report is not a part of the record. While there is a declaration of Defendant's attor-

ney in the record, the record does not state that the parties agreed to use the declaration as part of the stipulated facts. Thus, the facts stated in the police report and in the declaration are not considered in this appeal. This court's decision is based solely on the stipulations in the transcripts.

3. The record does not indicate whether the area was part of the beach or the park.

don Barry, who was also nude. The police officer had to approach within several feet of Defendant in order to observe Defendant's genitals. Defendant was charged, along with codefendants, with violating HRS § 707–734, which prohibits "indecent exposure."

## B.

At the hearing on January 14, 1999, it was agreed that the case would proceed by way of stipulated facts and thereafter be continued to allow the parties to submit legal memoranda. On February 4, 1999, Defendant filed a motion to dismiss or, in the alternative, for judgment of acquittal, arguing that, in contrast to the proscription of HRS § 707–734, Defendant did not intend to cause affront and his "actions [were] taken ... to avoid the non-nude sunbathing general public entirely." [4] On February 26, 1999, Plaintiff–Appellee State of Hawai'i (the prosecution) filed a memorandum in opposition to Defendant's motion. Relying on *State v. Rocker*, 52 Haw. 336, 475 P.2d 684 (1970), a case in which nude sunbathers were convicted of the offense of common nuisance, the prosecution maintained that only a general intent to "indecently expose oneself" was necessary to prove indecent exposure. *Id.* at 339, 475 P.2d at 687.

Defendant's motion was heard on March 25, 1999. After Defendant, codefendants, and the prosecution presented their arguments, the court ruled that the prosecution had met its burden of establishing Defendant criminally liable under HRS § 707–734. It first found that Defendant "going out to a public beach with the knowledge ... that [Defendant] would sunbathe in the nude" satisfied the element of intentional exposure of a person's genitals to a person to whom Defendant was not married as required under HRS § 707–734. The court further determined that if persons other than the police had been present, they would have been affronted.

The question then is whether these circumstances in which their conduct was likely to cause affront. That's a general-

ization, basically, in terms of what would be a reasonable and logical response to sunbathing in the nude on a public beach.

In this instance, the persons who observed them at that time, the alleged violations[,] were the police. The [c]ourt's finding is that their observations are such that the [c]ourt can then take the necessary notice that's required. That anyone from an elderly person to a young infant child could be in that area and see and observe what the police did.

I don't have to have testimony before me from the policemen that they were affronted. All I have to do is have the facts before me that would indicate that a reasonable person under the same circumstances could and would be affronted by it.

That's the [c]ourt's finding, that if a young child or an elderly person, or another member of the public in some category or branch was in the same situation as the police, it could very likely cause them to be affronted, and that's my finding.

The court adjudged Defendant guilty and imposed a fine of one hundred and fifty dollars ($150), but suspended one hundred dollars ($100) of it for a period of six months. On April 7, 1999, Defendant filed a notice of appeal.

## II.

On appeal, Defendant contends the prosecution failed to prove that Defendant acted: (1) "under circumstances likely to cause affront"; and (2) with the requisite state of mind. In response, the prosecution maintains that Defendant was "likely to cause affront since *anyone* could have observed" him (emphasis added) and that Defendant acted intentionally.

We conclude that the court applied the wrong legal standard in convicting Defendant under HRS § 707–734 and, further, as measured against the correct legal standard, there was insufficient evidence to establish his guilt.

---

**4.** Although there was no evidence that the police were affronted, codefendants also argued, citing *State v. Ferreira*, 68 Haw. 238, 709 P.2d 607

(1985), that Defendant and codefendants could not be arrested for activity that only annoyed the police.

## III.

The language of the original indecent exposure statute, HRS § 707–738 (1972), was adopted from that of Section 213.5 of the Model Penal Code (MPC). *Rocker*, 52 Haw. at 338 n. 1, 475 P.2d at 687 n. 1. Except for the words "he knows," shown in brackets below, HRS § 707–738 was the same as that MPC section and provided as follows:

> **Indecent exposure.** (1) A person commits the offense of indecent exposure if, with intent to arouse or gratify sexual desire of himself [or herself] or of any person, he [or she] exposes his [or her] genitals to a person to whom he [or she] is not married under circumstances in which [he or she knows] his [or her] conduct is likely to cause affront or alarm.
>
> (2) Indecent exposure is a petty misdemeanor.

In 1986, the legislature "incorporated all of the sexual offenses into five degrees of sexual assault." *State v. Cardus*, 86 Hawai'i 426, 435, 949 P.2d 1047, 1056 (App.1997) (internal quotation marks and citation omitted) (citing *State v. Buch*, 83 Hawai'i 308, 315, 926 P.2d 599, 606 (1996); 1986 Haw. Sess. L. Act 314 § 57, at 617–18; Conf. Comm. Rep. No. 51–86, in 1986 House Journal, at 937, 938). As a result, HRS § 707–738 was retitled "Sexual assault in the fifth degree," the phrase "with intent to arouse or gratify sexual desire of himself [or herself] or of any person" was deleted, the word "intentionally" was added, and HRS § 707–738 was renumbered as HRS § 707–734. 1986 Haw. Sess. L. Act 314 § 57, at 618. HRS § 707–734 (1986) then provided as follows:

> **Sexual assault in the fifth degree.** (1) A person commits the offense of sexual assault in the fifth degree if, the person intentionally exposes the person's genitals to a person to whom the person is not

married under circumstances in which the conduct is likely to cause affront or alarm.

> (2) Sexual assault in the fifth degree is a petty misdemeanor.

In 1991, the phrase "or alarm" was deleted from HRS § 707–734, and the word "alarm" was incorporated into existing section (1)(b) of HRS § 707–733. Sen. Com. Rep. No. 1000, in 1991 Senate Journal, at 1103. As amended, HRS § 707–733(1)(b) (1991) stated:

> **Sexual assault in the fourth degree.** (1) A person commits the offense of sexual assault in the fourth degree if:
>
> . . .
>
> (b) The person knowingly exposes the person's genitals to another person under circumstances in which the actor's conduct is likely to *alarm* the other person or put the other person in fear of bodily injury[.]
>
> (2) Sexual assault in the fourth degree is a misdemeanor.

1991 Haw. Sess. L. Act 214 § 1, at 498–99 (emphasis added).

The offense described in HRS § 707–734 was again renamed "indecent exposure." *Id.* HRS § 707–734 (1993) presently states as follows:

> **Indecent exposure.** (1) A person commits the offense of indecent exposure if, the person intentionally exposes the person's genitals to a person to whom the person is not married [5] under circumstances in which the actor's conduct is likely to cause affront.[6]
>
> (2) Indecent exposure is a petty misdemeanor.

According to a Senate Committee report, the amendment established

> a new dichotomy between behavior that is likely to cause fear of bodily injury or

---

5. The legislature employed the words "to a person to whom the person is not married" in order "to prevent spouses from bringing false charges as a means of settling domestic disputes." Conf. Com. Rep. No. 44, in 1991 Senate Journal, at 761.

6. HRS § 707–734 and the pertinent definition section (HRS § 707–700) (1993) do not define the term "affront." We may "[r]esort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms [not statutorily defined]." *State v. Chen*, 77 Hawai'i 329, 337, 884 P.2d 392, 400 (App.1994) (internal quotation marks and citations omitted). The term "affront" is defined as "[a]n insult or indignity; assault, insolence." *Black's Law Dictionary* 60 (6th ed.1990). *See also State v. Whitney*, 81 Hawai'i 99, 104 n. 4, 912 P.2d 596, 601 n. 4 (App.1996).

alarm and that which is likely to cause affront. The former[, (HRS § 707–733)], a more serious offense, will constitute fourth-degree sexual assault. The latter[, (HRS § 707–734),] has been renamed from sexual assault in the fifth degree *to indecent exposure. The newly titled section* [, (HRS § 707–734),] *is intended to deal with behavior such as nude sunbathing or streaking, that does not cause alarm or fear of bodily harm, in circumstances where it is likely to be an affront to a substantial part of the community.*

Sen. Com. Rep. No. 1000, in 1991 Senate Journal, at 1103 (emphases added).

The prosecution contends that the 1991 legislative history indicates HRS § 707–734 encompassed nude sunbathing like that engaged in by Defendant. On the other hand, Defendant maintains that the express language of the statute focuses on conduct a defendant "direct[s] at a particular person," rather than the likely effect of such conduct on others who could have been present.

## IV.

"[T]he interpretation of a statute ... is a question of law reviewable de novo." *State v. Cabrera,* 90 Hawai'i 359, 365, 978 P.2d 797, 803 (1999) (internal quotation marks and citations omitted). In interpreting statutes, "the fundamental starting point is the language of the statute itself," *In re Doe,* 90 Hawai'i 246, 252, 978 P.2d 684, 690 (1999) (internal quotation marks and citations omitted), and "where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." *Citizens for Protection of North Kohala Coastline v. County of Hawai'i,* 91 Hawai'i 94, 107, 979 P.2d 1120, 1133 (1999) (internal quotation marks and citations omitted).

None of the parties contend and we do not discern that the language of HRS § 707–734 is ambiguous inasmuch as, on its face, there is no "doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression." *Id.* In interpreting this statute, then, no need to consult extrinsic aids such as legislative committee reports arises.

Hence, "we do not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States,* 510 U.S. 135, 147–48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (citations omitted). *See also Dines v. Pacific Ins. Co.,* 78 Hawai'i 325, 332, 893 P.2d 176, 183 (1995) (indicating that " '[s]tatements by legislators or even committee reports need not reflect the purpose which a majority of the legislators believed is carried out by [a] statute,' " (quoting *Yoshizaki v. Hilo Hosp.,* 50 Haw. 150, 153 n. 5, 433 P.2d 220, 223 n. 5 (1967)), and that " 'our duty in interpreting statutes is to give effect to the legislature's intent[,] which is obtained primarily from the language of the statute' " (quoting *Allstate Ins. Co. v. Hirose,* 77 Hawai'i 362, 364, 884 P.2d 1138, 1140 (1994))). Moreover, despite the comments regarding nude sunbathing in the 1991 legislative committee report, it is not at all evident from the statutory language ultimately enacted that the legislature meant to include all nude sunbathing within the proscription of HRS § 707–734.[7] *See State v. Dudoit,* 90 Hawai'i 262, 271, 978 P.2d 700, 709 (1999) (citing *Buch,* 83 Hawai'i at 325–26, 926 P.2d at 616–17 (Levinson, J., concurring and dissenting) ("Even where the Court is convinced in its own mind that the Legislature really meant and intended something not expressed by the phraseology of the Act, it has no authority to depart from the plain meaning of the language used.") (internal quotation marks and citations omitted)).

Additionally, due process of law under the fourteenth amendment to the United States Constitution and article 1, section 5 of the Hawai'i Constitution requires that a penal statute state with reasonable clarity the act it proscribes and provide fixed standards for adjudicating guilt; otherwise, the statute must be held void for vagueness. *State v. Richie,* 88 Hawai'i 19, 31, 960 P.2d 1227, 1239 (1998). This is because, to comport with due process, penal statutes must inform a person of ordinary intelligence of what conduct is prohibited so that he or she may choose between lawful and unlawful conduct. *State v. Crouser,* 81 Hawai'i 5, 14, 911 P.2d 725,

---

7. The statute of course does not expressly refer to nude sunbathing.

734 (1996); *State v. Riveira*, 92 Hawai'i 521, 993 P.2d 555 (2000) (adopting the dissenting opinion of Acoba, J. in *State v. Riveira*, 92 Hawai'i 546, 993 P.2d 580 (App.1999)).

> [D]ue respect must be accorded the effect of words used by the legislature, even if their true significance is not imparted in legislative committee reports.... When faced with interpreting statutes, the courts must be vigilant of the consequences statutes work, whether declared by the legislature or not. It is how the statute would be read by the layperson which guides our construction in criminal cases.

*Riveira*, 92 Hawai'i at 561, 993 P.2d at 595 (Acoba, J., dissenting). "Because construction of a criminal statute must be guided by the need for fair warning, it is rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text." *Crandon v. United States*, 494 U.S. 152, 160, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990).

Consonant with this precept, this court has also said that, "[w]hen possible, we interpret enactments of the [l]egislature contained in the criminal code so as to uphold their constitutionality," and, therefore, "presume that such legislation purports to operate within the limitations of our state and federal constitutions." *In re John Doe*, 76 Hawai'i 85, 93, 869 P.2d 1304, 1312 (1994) (internal quotation marks and citations omitted). Therefore, to avoid running afoul of these fundamental principles, we give HRS § 707–734 a construction that would not ensnare conduct beyond the plain import of the statute.

## V.

### A.

Applying the statute as written to the stipulated facts, it is evident and not disputed that, by sunbathing in the nude, Defendant exposed his genitals to persons to whom he was not married. However, whether Defendant possessed the requisite state of mind to incur criminal liability is disputed.

On appeal, Defendant maintains the prosecution was obligated to prove that he "possessed the specific intent to expose his genitals to a particular person." Relying on *Rocker*, the prosecution contends that a general intent "that exposure was made where it was likely to be observed by others" suffices. However, arguments concerning specific and general intent are no longer relevant. Hawai'i has adopted the MPC's state of mind requirements, which have abandoned the common law concepts of "specific intent" and "general intent," in favor of four defined culpable states of mind. *See* HRS § 702–206; *see also* Stand. Comm. Rep. No. 227, in 1971 House Journal, at 785 (stating that "[in Chapter 702,] the [Hawai'i Penal Code(HPC) ] would eliminate the wide diversity of words and phrases used to denote or connote a state of mind sufficient to impose penal liability, limiting the provisions of the law to four states of mind: intentional, knowing, reckless and negligent"); commentary to MPC § 2.02 ("The purpose of articulating [four kinds of culpability] is ... to dispel the obscurity with which the culpability requirement is often treated when such concepts as 'general criminal intent,' 'mens rea,' 'presumed intent,' 'malice,' 'wilfulness,' 'scienter' and the like have been employed.").

In that regard, this court, in applying the HPC, has indicated that a state of mind with which the defendant acts applies to all elements of the offense, unless otherwise specified in the statute defining the offense.

> HRS § 701–114(1)(a) and (b) (1993) requires proof beyond a reasonable doubt of each element of the offense, as well as the state of mind required to establish each element of the offense. Moreover, HRS § 702–204 (1993) provides in relevant part that "a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies *with respect to each element of the offense*." ... HRS § 702–207 (1993) provides that "*[when] the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the specified state of mind shall apply to all elements of the offense*, unless a contrary purpose plainly appears." In addition, pursuant to HRS § 702–205 ..., the requisite state of mind applies to such conduct, *attendant circum-*

*stances,* and results of conduct as are specified by the definition of the offense.

*State v. Hoang,* 86 Hawai'i 48, 58, 947 P.2d 360, 370 (1997) (internal quotation marks and citations omitted; some ellipsis points added and some in original; brackets in original) (emphases added). On its face, HRS § 707–734 "specifies the state of mind sufficient for the commission of the offense, without distinguishing among the elements thereof." *Id.* As a result, "the specified state of mind [in HRS § 707–734, that a defendant act intentionally,] applies to all elements of [that] offense." *Id.*

### B.

 HRS § 702–206(1) defines the "intentional" state of mind as follows:

(a) A person acts intentionally with respect to his conduct when it is his conscious object to engage in such conduct.

(b) A person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances or believes or hopes that they exist.

(c) A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result.

Accordingly, as to the "conduct" element of indecent exposure, i.e., the exposure of Defendant's genitals to another person, the prosecution was required to prove, pursuant to HRS § 702–206(1)(a), that it was Defendant's conscious object to engage in the exposure. As to the "attendant circumstance" elements of the offense, i.e., that the other person was not married to Defendant and that, under the circumstances, the exposure was likely to affront the other person, the prosecution was required to prove, pursuant to HRS § 702–206(1)(b), that Defendant was aware, believed, or hoped that the other person was not married to him and was likely to be affronted.

### VI.

A subsidiary issue raised by the defense's formulation of the intent issue is whether HRS § 707–734 protects the person or persons at whom a defendant directs his or her conduct or, as the court found, protects those who "could" happen on such conduct.[8] The prosecution, agreeing with the latter position, argues that Defendant's nude sunbathing on a public beach was likely to cause affront to *someone* because *anyone,* if present, could have observed his conduct.

 As worded, the harm sought to be avoided in HRS § 707–734—an affront—follows from the prohibited preceding and precipitating exposure to "a person" to whom the defendant is not married. Since the exposure that precedes the affront is to "a person," it is logical to conclude that the affront suffered is that incurred by the same "person" (or persons) to whom a defendant bares his or her genitals. Thus, the objective of HRS § 707–734, as textually manifested, is the prevention of the affront that would be experienced by one who is so confronted by a defendant.

 This construction is confirmed by an *in pari materia* reading of HRS §§ 707–734 and –733(1)(b), both of which concern exposure of a person's genitals to another person. "[L]aws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other [and w]hat is clear in one statute may be called in aid to explain what is doubtful in another." *State v. Putnam,* 93 Hawai'i 362, 371 n. 9, 3 P.3d 1239, 1248 n. 9 (2000) (internal quotation marks, brackets, and citations omitted). As the legislative history of these two statutes indicates, *supra,* this prohibited act is treated as two separate offenses, one where the act is "likely to cause fear of bodily injury or alarm," enacted as HRS § 707–733(1)(b), and the other as a less serious offense where the act is merely "likely to cause affront," enacted as HRS § 707–734. In aid of construing

---

8. In this respect, the commentary to HRS § 701–103 (1993) states that a purpose of the HPC is to "[codify] specific offenses which constitute harms to social interests which the law in general and this Code in particular seek to protect: i.e., offenses against the person, property rights, the family and incompetents, public administration, public order, and public health and morals."

HRS § 707–734, HRS § 707–733(1)(b) makes clear that the proscription arising from the prohibited act is aimed at the harm, in the case of HRS § 707–733(1)(b), the "alarm" and "fear of bodily injury" undergone by the person to whom the defendant exposed his or her genitals:

> (b) The person knowingly exposes the person's genitals to another person under circumstances in which the actor's conduct is likely to alarm *the other person* or put *the other person* in fear of bodily injury[.]

(Emphases added.) Hence, HRS § 707–733 makes express what is implied in HRS § 707–734, that is, that these statutes seek to protect the person or persons to whom the defendant directs his conduct, the only distinction between HRS §§ 707–733 and –734 in this regard being the circumstantial effect on the person so assailed.

## VII.

This court has held that "when the appellate court passes on the legal sufficiency of [trial] evidence to support a conviction . . . [t]he test . . . is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." *State v. Eastman*, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996) (internal quotation marks and citations omitted). " 'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable [a person] of reasonable caution to support a conclusion[.]" *Id.* (brackets in original).

There is nothing in the stipulated facts that directly or inferentially proves that Defendant possessed the requisite culpable state of mind with respect to a key attendant circumstance, i.e., that he was aware, believed, or hoped that his act of exposure "was likely to cause affront" to Barry.

At the time of his arrest, Defendant was conversing with Barry. There is no evidence Defendant was in the observable vicinity of any other person. Barry was in the same state of undress as Defendant and apparently not disturbed by Defendant's lack of attire, much less their mutual state of nudity. All other occupants of the area except for the police were, like Defendant, similarly unattired. Objectively viewing Defendant's intent in the context of these circumstances, no reasonable trier of fact could find that Defendant's act was likely to cause affront to Barry. Since Barry was in the same state of undress, there is no rational or logical basis for concluding that Defendant intended to cause affront to Barry. Therefore, we conclude that the evidence was not of "sufficient quality and probative value to enable [a person] of reasonable caution to support [the] conclusion" that Defendant acted intentionally under circumstances likely to cause affront. *Id.* (brackets in original). As a result, the court's conclusion of guilt was wrong. *State v. Wilson*, 92 Hawai'i 45, 47, 987 P.2d 268, 270 (1999) ("The circuit court's conclusions of law are reviewed under the right/wrong standard.") (citation omitted).

## VIII.

The prosecution argues that Defendant's nude sunbathing on a public beach was likely to cause affront to someone. Emphasizing the word "likely" within the phrase "the actor's conduct is likely to cause affront," as it appears in HRS § 707–734, the prosecution maintains the "indecent exposure [statute] does not require that anyone actually be exposed to the activity." As we determined *supra*, the text of HRS § 707–734, its legislative history and that of HRS § 707–733, and an *in pari materia* construction of both statutes compels the conclusion that HRS § 707–734 seeks to protect the particular person or persons at whom a defendant directs his or her conduct. Hence, the requirement that a defendant, by his or her act, "intentionally" seeks to cause an affront assumes that a particular person was or identifiable persons were, in fact, "actually . . . exposed to the activity." Thus, in this context, the phrase "likely to cause affront" has nothing to do with whether another person is actually affronted, but, rather, modifies and establishes, from an objective point of view, the relevant "attendant circumstances" that result in criminal liability. *See* Sen. Com. Rep. No. 1000, in 1991 Senate Journal, at 1103 (quoted *supra* at page 64, 8 P.3d at page 1228) (stat-

ing that circumstances are those in which "it is likely" that "a substantial part of the community" would be affronted).

## IX.

As previously indicated, the prosecution contends that *Rocker* supports Defendant's conviction because, in *Rocker*, this court held that the defendants' nude sunbathing at a public beach supported their convictions of indecent exposure under HRS § 727-1 (1968). *Rocker* is not applicable. In *Rocker*, "indecent exposure" was not defined as it is in HRS § 707-734, but was an enumerated example of the HRS § 727-1 "offense of common nuisance." [9] It was said that indecent exposure by a person in a public place where it may be seen by others was a common nuisance. *Rocker*, 52 Haw. at 339, 475 P.2d at 687. But the *Rocker* court was careful to point out that the offense of indecent exposure, described in the proposed draft of HRS § 707-738 (1972), the predecessor of HRS § 707-734,[10] was distinct from the common nuisance offense involved in *Rocker*.[11] Consequently, *Rocker* was not concerned with the offense of indecent exposure as described in HRS § .707-738, *see supra*, but, rather, the interpretation of the common nuisance statute then in effect.

## X.

For the reasons stated above, the court's March 25, 1999 judgment of conviction and sentence is reversed.

9. HRS § 727-1 provided in pertinent part as follows:
> The offense of common nuisance is the endangering of the public personal safety or health, or doing, causing or promoting, maintaining or continuing what is offensive, or annoying and vexatious, or plainly hurtful to the public; or is a public outrage against common decency or common morality; or tends plainly and directly to the corruption of the morals, honesty, and good habits of the people; the same being without authority or justification by law:
> As for example:
> . . . .
> Open lewdness or lascivious behavior, or *indecent exposure* [.]
> (Emphasis added).

10. *See supra* text at part III. for the provisions of HRS § 707-738.

### Concurring Opinion by RAMIL, J.

The majority's analysis does not yield a result apparently inconsistent with the legislative purpose and design of Hawai'i Revised Statute (HRS) § 707-734 (1993). Accordingly, I concur with the majority that a conviction under the statute requires proof beyond a reasonable doubt that "it was Defendant's conscious object to engage in the exposure[,]" and "that Defendant was aware, believed, or hoped that the other person was not married to him and was likely to be affronted." Majority at 66, 8 P.3d at 1230.

As I have stated, I believe that this court's foremost obligation is to ascertain and give effect to the intent of the legislature. *State v. Dudoit*, 90 Hawai'i 262, 978 P.2d 700 (1999) (Ramil, J., dissenting). And this court has long recognized the "intent of the legislature" to be the "paramount guide" in statutory interpretation. *State v. Prevo*, 44 Haw. 665, 668, 361 P.2d 1044, 1047 (1961). While rules of statutory construction may be utilized to ascertain and implement legislative intent, "they may not be used to deflect legislative purpose and design." *State v. Murray*, 63 Haw. 12, 19, 621 P.2d 334, 339 (1980) (citing *State v. Smith*, 59 Haw. 456, 461-62, 583 P.2d 337, 341-42 (1978); *Prevo*, 44 Haw. at 668-69, 361 P.2d at 1047).

I agree that "despite the comments regarding nude sunbathing in the 1991 legislative committee report, it is not at all evident

11. [T]he Hawai'i Penal Code (Proposed Draft) 1970 adopts the American Law Institute Model Penal Code classification and definition of indecent exposure. It is classified as a sexual offense and is defined as follows: (1) A person commits the offense of indecent exposure if, with intent to arouse or gratify sexual desire of himself [or herself] or of any person, he [or she] exposes his [or her] genitals to a person to whom he [or she] is not married under circumstances in which he [or she] knows his [or her] conduct is likely to cause affront or alarm. (2) Sexual assault in the fifth degree is a petty misdemeanor. *This classification and definition of the crime of indecent exposure takes it out of the realm of common nuisances and makes it a specific sexual offense.*
*Rocker*, 52 Haw. at 338 n. 1, 475 P.2d at 687 n. 1. (citation omitted) (emphasis added).

from the statutory language ultimately enacted that the legislature meant to include all nude sunbathing within the proscription of HRS § 707–734." Majority at 64, 8 P.3d at 1228. Accordingly, I concur with the result reached by the majority's interpretation of HRS § 707–734 and in the opinion.