STATE OF HAWAII, Plaintiff-Appellant, *v.* GEORGE FERREIRA, Defendant-Appellee

NO. 10001

(CASE NO. CTR-1 of 6/22/84)

NOVEMBER 19, 1985

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The State of Hawaii appeals from an order of the District Court of the First Circuit dismissing a charge of disorderly conduct brought against George Ferreira.[1] In the district court's view the establishment of

---

[1] The charge was couched in these terms:

Mr. Ferreira, on or about March 22, 1984, in the Waianae District, City and County of Honolulu, State of Hawaii, with the intent to cause physical inconvenience or alarm to a member or members of the public, or recklessly creating a risk thereof, you did make unreasonable noise, and failed to heed the admonition of a police officer that the noise was unreasonable and should be stopped, thereby committing the offense of Disorderly Conduct, violating Section 711-1101 of the Hawaii Revised Statutes.

Those parts of Hawaii Revised Statutes (HRS) § 711-1101 relevant to the charge are § 711-1101(1)(b), reading:

an element of the offense, an "intent to cause physical inconvenience or alarm by a member or members of the public or recklessly creating a risk thereof," called for testimony from a member of the public. The State argues the court erred because the necessary proof could have been elicited from police officers who witnessed the episode giving rise to the charge, and we agree.

I.

George Ferreira was arrested for disorderly conduct on March 22, 1984. On the scheduled trial date, June 22, 1984, he was orally charged with a violation of HRS § 711-1101. Upon the entry of a plea of not guilty, the trial judge asked the deputy prosecuting attorney who was presenting the State's case whether he would be offering the testimony of a member of the public to demonstrate "physical inconvenience or alarm by a member of the public."[2] The prosecutor, who had not

---

(1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, he:

.   .   .   .

(b) Makes unreasonable noise . . . .
and § 711-1101(2) reading:
(2) Noise is unreasonable, within the meaning of subsection (1)(b), if considering the nature and purpose of the person's conduct and the circumstances known to him, including the nature of the location and the time of the day or night, his conduct involves a gross deviation from the standard of conduct that a law-abiding citizen would follow in the same situation; or the failure to heed the admonition of a police officer that the noise is unreasonable and should be stopped or reduced.

The renter, resident, or owner-occupant of the premises who knowingly or negligently consents to unreasonable noise on his premises shall be guilty of a noise violation.

[2]The transcript of proceedings in relevant part reads:

THE COURT: Before we go into this, Mr. Kaywell, we just had several cases of this nature. We're aware of several precedent cases which require a member of the public to be produced to show physical inconvenience or alarm.

.   .   .   .

We have a clause out of the commentary and I believe there are cases of record that I don't have the citation but they've been pointed out to me on several occasions. The police officer . . . he's the one who was there; the charge is Disorderly Conduct; he was directly involved but that's not going to be sufficient.

planned to do so, replied the State would prove its case through evidence adduced from police officers who were at the scene of the alleged offense.

The court, firm in its belief that controlling precedent demanded testimony of physical inconvenience or alarm from someone other than a police officer, apprised the prosecutor that it was "going to require [him to] have a member of the public present." Taken aback by the court's statement, the prosecutor sought a postponement of the trial. But the court denied the request for continuance and advised counsel that it would entertain a motion for dismissal. Defense counsel moved to dismiss the case as suggested, and the State appeals from the order granting the motion.

## II.

The issue posed on appeal, as noted earlier, is whether an "intent to cause physical inconvenience or alarm by a member or members of the public" or the reckless creation of a risk of such inconvenience or alarm may be proved without the testimony of a member of the public. But the defendant asserts the order from which the State purports to appeal is not an appealable one, and our inquiry at the outset is whether an appeal lies from the order.

"The right of appeal is purely statutory and exists only when given by some Constitutional or statutory provision." *Chambers v. Leavey,* 60 Haw. 52, 57, 587 P.2d 807, 810 (1978) (citations omitted). "Save in certain instances . . . , the State has no appeal in a criminal case unless the defendant[] [is] convicted." *Peters v. Jamieson,* 48 Haw. 247, 256, 397 P.2d 575, 582 (1964). But by virtue of HRS § 641-13(2), "[a]n appeal may be taken by . . . the State . . . [f]rom an order or judgment . . . dismissing the case where the defendant has not been put in jeopardy . . ." The question then is whether the defendant has been put in jeopardy when the case was dismissed.

"[J]eopardy describes the risk that is traditionally associated with criminal prosecution." *Breed v. Jones,* 421 U.S. 519, 528 (1975). In deciding "cases in which . . . the Double Jeopardy Clause has been invoked, the courts have found it useful to define a point in criminal proceedings at which the constitutional purposes and policies are implicated by resort to the concept of 'attachment of jeopardy.'" *Serfass v. United States,* 420 U.S. 377, 388 (1975) (citation omitted). The Supreme

Court, for example, has concluded that "[i]n a nonjury trial, jeopardy attaches when the court begins to hear evidence." *Id.* (citations omitted). We have said "jeopardy does not attach unless there is a risk of a determination of guilt." *State v. Rodrigues,* 67 Haw. 70, 79, 679 P.2d 615, 622, *cert. denied,* ___ U.S. ___, ___, 105 S. Ct. 580, 580 (1984).

Here, the trial was aborted at the instance of the defendant after his arraignment and plea but before the State's first witness was sworn. Whether the crucial point at which jeopardy attaches is when the trial court begins to hear evidence or when the defendant is "subjected to the possibility of conviction," *id.* at 80, 679 P.2d at 622, it was not yet reached when the case was dismissed. Thus he has not been put in jeopardy, and we turn to the merits of the appeal.

### III.

The conduct for which George Ferreira was charged with a violation of HRS § 711-1101 was an intentional or reckless emission of noise that resulted in or created a risk of physical inconvenience or alarm on the part of a member or members of the public. The district court read the statute and our decisions as demanding evidence of physical inconvenience or alarm directly from a member of the public. We do not read § 711-1101 so restrictively; nor have we done so in prior decisions expounding the disorderly conduct statute.

### A.

The origins of disorderly conduct as an offense "are in the common law crime of 'Breach of the Peace,'" a crime that "encompassed a wide range of activities which disturbed the public peace and tranquility or tended to cause such a disturbance." M. Bassiouni, *Substantive Criminal Law* ch. 9, § 14.1 (1978). The offense "has been very broadly defined in the past . . . to include numerous petty annoyances to the public." HRS § 711-1101 Commentary (1976). The drafters of the Penal Code, however, gave "disorderly conduct" a far narrower definition, and there is now a "statutory requirement that the accused must have acted with the intent to cause physical inconvenience to, or alarm by, a member or members of the public, or that he acted with reckless disregard that his conduct might produce such a result." *State v. Faulkner,* 64 Haw. 101, 104, 637 P.2d 770, 773 (1981). "A person [therefore] may not be arrested

for disorderly conduct as a result of activity which annoys only the police." HRS § 711-1101 Commentary.

Yet, it does not follow that police officers who observe disorderly conduct cannot give evidence thereof. Nothing on the face of the statute or in its history suggests police officers have been rendered incompetent in this regard. "Every person is competent to be a witness except as otherwise provided in [the Hawaii Rules of Evidence (Haw. R. Evid.)]." Haw. R. Evid. 601. One is only "disqualified to be a witness if he is (1) incapable of expressing himself so as to be understood, either directly or through interpretation by one who can understand him, or (2) incapable of understanding the duty of a witness to tell the truth." Haw. R. Evid. 603.1. And we think the testimony of the police officers who witnessed the incident of alleged disorderly conduct may suffice to convict the accused.

Granted, "[i]t is not always easy to prove at a later date the state of a man's mind at that particular earlier moment when he was engaged in conduct causing or threatening harm to the interests of others." W. La Fave and A. Scott, *Handbook on Criminal Law* § 28 (1972). It is most unlikely that he then spoke his thoughts for others to hear. *Id.* "So of course [intent] must be gathered from his words (if any) and actions in the light of all the surrounding circumstances." *Id.* Moreover, a person may be guilty of a violation of HRS § 711-1101 if he acted "with reckless disregard that his conduct might produce" physical inconvenience or alarm. *State v. Faulkner,* 64 Haw. at 104, 637 P.2d at 773. Surely a police officer, as well as a member of the public, may give evidence that the noise made by the defendant and the attendant circumstances were such that there was "a substantial and unjustifiable risk" of physical inconvenience to or alarm by a member of the public or that the conduct in question "involve[d] a gross deviation from the standard of conduct . . . a law-abiding person would observe in the same situation." HRS § 702-206(3)(d).[3]

---

[3]The Penal Code's definition of the relevant term is:

(3) "Recklessly."

(a) A person acts recklessly with respect to his conduct when he consciously disregards a substantial and unjustifiable risk by engaging in such conduct.

(b) A person acts recklessly with respect to attendant circumstances when he consciously disregards a substantial and unjustifiable risk that such circumstances exist.

## B.

The district court, however, believed there were "several precedent cases which require a member of the public to be produced to show physical inconvenience or alarm." *See supra* note 2. Although it did not say what in its view was controlling, we have reason to think it mistakenly relied on *State v. Faulkner* and *State v. Jendrusch*, 58 Haw. 279, 567 P.2d 1242 (1977), in dismissing the case.

Faulkner was convicted of disorderly conduct under the same subsection of HRS § 711-1101 that Ferreira was charged. The alleged offense there occurred at the entrance to the zoo at Kapiolani Park at 4:30 in the afternoon on a weekday. Upon review of the record we found "[a]t another time and in a different setting, [Faulkner's] conduct might have been disruptive of the serenity of the surroundings." *State v. Faulkner*, 64 Haw. at 104, 637 P.2d at 773. But we concluded "the evidence . . . failed to demonstrate that his actions had contributed materially to the noise volume then being generated by the rush hour traffic." *Id.* In our opinion there was "no evidence presented by the State that the defendant's conduct had the effect of causing actual physical inconvenience to any member of the public." *Id.* Nor could we find a likelihood "that any member of the public would have been physically disturbed or alarmed by the noise." *Id.* at 104-05, 637 P.2d at 773-74.

*Faulkner* thus turned on the lack of evidence on several elements of disorderly conduct. The issue here, however, is whether one of those elements, physical inconvenience or alarm by a member of the public, or a risk thereof, can only be established through the testimony of a member of the public. Put another way the question is whether a police officer is competent to give evidence of physical inconvenience or alarm by a member of the public when a violation of HRS § 711-1101(1)(b) is alleged, one we did not reach in *Faulkner*.

---

(c) A person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result.

(d) A risk is substantial and unjustifiable within the meaning of this section if, considering the nature and purpose of the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation.

HRS § 702-206(3).

*Jendrusch* likewise has no bearing on the case before us. The charge against Jendrusch was that he made unreasonable noise "with intent to cause *public inconvenience, annoyance or alarm* by members of the public or recklessly creating a risk thereof." 58 Haw. at 280, 567 P.2d at 1243 (emphasis in original). We concluded "the . . . charge could not possibly support the defendant's conviction." *Id.* at 283, 567 P.2d at 1245. "It was not enough," we said, "for the complaint to allege that the defendant had engaged in the [proscribed conduct] 'with intent to cause public inconvenience, annoyance, or alarm.'" *Id.* at 282, 567 P.2d at 1244. And since the essential element of an intent to cause *physical* inconvenience was omitted from the charge, we ruled it was fatally defective. The charge against Ferreira does not suffer from the same infirmity. *See supra* note 1.

The district court misread the pertinent statute and our decisions in erroneously dismissing the case; we therefore vacate the order of dismissal and remand the case for trial.

*Peter M. Wilkens (Arthur E. Ross* on opening brief; *Peter M. Wilkens* on reply brief), Deputy Prosecuting Attorneys, for appellant.

*Adelina Simpliciano (Harold Hata & Richard W. Pollack* on the brief), Deputy Public Defenders, for appellee.