Electronically Filed
Supreme Court
SCWC-22-0000329
05-JUN-2026
11:19 AM
Dkt. 27 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

JONATHAN ELLWAY,
Petitioner/Defendant-Appellant.

SCWC-22-0000329

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000329; CASE NO. 2DTA-21-00171)

JUNE 5, 2026

DEVENS, C.J., McKENNA, EDDINS, AND GINOZA, JJ.,
AND CIRCUIT JUDGE KUBOTA, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY DEVENS, C.J.

I.   INTRODUCTION

Petitioner/Defendant-Appellant Jonathan Ellway (Defendant)

claims his Operating a Vehicle Under the Influence of an

Intoxicant (OVUII) conviction by the District Court of the

Second Circuit (district court) violated his constitutional protections against double jeopardy under the plain error doctrine.

Defendant was prosecuted in a bench trial for one count of OVUII pursuant to Hawai'i Revised Statutes (HRS) § 291E-61(a)(1) and/or 291E-61(a)(3) (2020).[1]  After Respondent/Plaintiff-Appellee's (State) first witness testified, but before the State completed presenting all of its evidence, the presiding district court judge (first judge) was appointed to a position on the circuit court bench and exited the bench trial before rendering a judgment.  A second district court judge (second judge) was subsequently assigned to Defendant's case, heard testimony from the State's second and final witness, conducted a Tachibana colloquy when Defendant chose not to testify, and found

---

[1]     The Honorable Kirstin M. Hamman presided.

HRS § 291E-61 (2020) states in relevant part:

> (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> > (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
> >
> > . . . .
> >
> > (3) With .08 or more grams of alcohol per two hundred ten liters of breath[.]

HRS § 291E-61(a)(1), (3).

Defendant guilty of OVUII.[2]

Both parties and the court agreed that jeopardy attached during the first proceeding when the first judge, serving as the trier of fact, heard testimonial evidence from the State's first witness. When that first judge was elevated to the circuit court and exited the bench trial without rendering a judgment, the judge effectively discharged herself as the fact-finder.

While Hawaiʻi Rules of Penal Procedure (HRPP) Rule 25(a) allows a judge to be substituted during a jury trial, it does not authorize such a substitution in a bench trial.[3] Thus, when the second judge took over, the district court did not just continue an ongoing trial. That proceeding had ended. Rather, the court presided over a second prosecution as a second tribunal without a proper mistrial of the first proceeding. This second trial was unlawful pursuant to constitutional protections barring double jeopardy, and the resulting

---

[2]    The Honorable Blaine J. Kobayashi presided.

[3]    Providing for a judge's unavailability during a "jury trial," HRPP Rule 25(a) (eff. 2012) stated that

> [i]f by reason of absence from the State, death, sickness or other disability, including retirement or disqualification, the judge before whom a **jury trial has commenced** is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he or she has become familiarized with the record of the trial, may proceed with and finish the trial.

HRPP Rule 25(a) (emphasis added).

3

conviction must be vacated.  We vacate the district court's judgment.

## II.  BACKGROUND

### A.  Factual Background

On February 20, 2021, Defendant was arrested for suspicion of driving under the influence of alcohol on the Hana Highway. At the Wailuku police station, Defendant was administered a breath test which provided a 0.113 blood alcohol content (BAC) reading, exceeding the legal limit of 0.08.[4]

### B.  District Court Proceedings

The State charged Defendant with OVUII in violation of HRS § 291E-61(a)(1) and/or 291E-61(a)(3).

#### 1.  First Judge Presiding

Defendant's bench trial commenced before the first judge on September 17, 2021.

The State's first witness, Maui Police Department (MPD) "DUI Task Force" Supervisor Sergeant Nicholas Krau (sergeant), testified in detail about MPD's intoxilyzer device used to obtain a breath sample for blood alcohol measurements, as well as the training of MPD personnel to operate the device.  After hearing the sergeant's testimony, the first judge continued the

---

[4]    Defendant took the intoxilyzer test twice.  The first test was invalidated due to a radio frequency interference error.

4

bench trial to December 17, 2021.

We take judicial notice that the first judge was appointed to the circuit court bench on October 8, 2021, and was confirmed by the Senate on October 29, 2021--nearly two months before Defendant's trial was to resume.[5]  On December 17, 2021, the first judge was sworn in as a new circuit court judge.[6]

### 2. Second Judge Presiding

The same day the first judge was sworn in, the second judge appeared in Defendant's case to preside over the pending district court proceedings.  The second judge stated on the record, "Before we start, I will note for the record that the [c]ourt reviewed all of the records and files in this case, including reviewing the entire videotape proceedings of the trial that started on September 17, 2021."

The State indicated it was ready to proceed, but recognizing the matter was now before a new, second trier of fact, the deputy prosecuting attorney (DPA) raised "concerns"

---

[5]     Pursuant to Hawai'i Rules of Evidence (HRE) Rule 201, we notice Governor Ige announces judicial appointments for O'ahu, Maui, Hawai'i circuit courts, EIN Presswire (Oct. 8, 2021), https://www.einpresswire.com/article-print/553434714/office-of-the-governor-news-release-governor-ige-announces-judicial-appointments-for-o-ahu-maui-hawai-i-circuit-courts [https://perma.cc/4FB9-MV8U]; and Vote on Gov. Msg. No. 4, 31st Leg., 3rd Spec. Sess. (Haw. 2021), in Senate Journal, at 4.

[6]     See Hamman Sworn-In, Hawai'i State Judiciary (Dec. 17, 2021), https://www.courts.state.hi.us/news_and_reports/2021/12/hamman-sworn-in [https://perma.cc/L5X2-QEG2].

about going forward "as the trier of fact has changed."

The second judge asked defense counsel if Defendant had "any objection to this court presiding over his continued trial[.]"  Defense counsel explained, "I haven't actually talked to him about that[,]" as counsel "wasn't sure how the Court was going to proceed either," and that calls were made earlier to the court in an attempt to "try to talk about this[.]"  Further, the DPA expressed concern about the circumstances, stating, "I just have legitimate concerns regarding proceeding and based on some of the caselaw that was found by our appellate division regarding the trier of fact is changing [sic] at this point."

The second judge informed the parties that the court "was prepared to hear the trial today" after taking the time "to review the entire procedural history of this case, including the trial that started on September 17, 2021."  The second judge also noted that the first judge was sworn in that day and questioned how a trial could be restarted after it had "started with jeopardy already being attached."

The DPA suggested two options to the court: (1) continue forward with the trial "with the consent of defense" because the trier of fact had changed and "it could create potential appealable issues"; or (2) "restart the proceedings with a new trier of fact to hear the case from the beginning" by ordering a

"mistrial" or "a potential dismissal without prejudice," which the DPA proposed was "the safer route to go."

The district court then cited to the ICA's unpublished summary disposition order in State v. Fleming, No. CAAP-15-0000772, 2019 WL 5418065 (Haw. App. Oct. 22, 2019) (SDO) as being applicable to Defendant's case.[7] Fleming, the second judge observed, arose from a criminal OVUII bench trial where a new judge stepped into the trial mid-stream to replace the first fact-finder judge to finish the trial. The defendant in Fleming appealed the district court's conviction of the defendant for OVUII, alleging in part that the substitute judge, who presided over the second day of trial, erred when they failed to certify familiarity with the trial record as HRPP Rule 25(a) appeared to require. Fleming, No. CAAP-15-0000772, at *2. The Fleming court concluded that Fleming's HRPP Rule 25(a) challenge failed because that rule only applied to judicial substitutions in criminal jury trials, not in bench (i.e., non-jury) trials. Id. at *8. However, the Fleming court also stated that "[t]he judge who presided over the second day of trial was properly certified even if HRPP Rule 25(a) applied to Fleming's bench trial." Id. (emphasis added).

---

[7]    The ICA's decision in Fleming was not appealed to this court.

7

In apparent reliance on Fleming, the second judge in the case at bar directed defense counsel to speak to her client "about what's happening right now, [then] you let me know what his position is after you have spoken to him."  The second judge instructed defense counsel as follows:

> I think [Defendant] needs -- I don't know if he was aware that [the first judge] wasn't going to be sitting in my position right now, number one.  Number two, I want to know specifically whether or not he has any objections to the Court presiding over **this continued trial**.

(Emphasis added.)

After a brief recess, the court reconvened and defense counsel informed the second judge that she had read Fleming and spoke to Defendant "about that."  Defense counsel then stated, "We have no objection to you presiding and continuing this trial."  The State agreed to proceed after noting that "the defense consents."[8]

When trial "continued" on April 1, 2022, the State called the arresting officer as its second and final witness with the second judge now presiding as the sole trier of fact.  After the State rested, Defendant moved for acquittal and dismissal, which the district court denied.  The second judge then colloquied Defendant, who waived his right to testify.

---

[8]    On April 1, 2022, before the State resumed presenting its case-in-chief, the second judge orally denied Defendant's "motion for reconsideration."

The district court found Defendant guilty of OVUII pursuant to HRS § 291E-61(a)(3). Defendant's sentence included a fine, substance abuse program attendance, and a one-year revocation of his driver's license. An amended judgment was entered on May 3, 2022.

## C. ICA Proceedings

Defendant appealed to the ICA asserting that the district court plainly erred by "completing" Defendant's trial "due to" the unavailability of the first judge before whom trial had commenced, and without obtaining Defendant's knowing, intelligent, and voluntary consent through an on-the-record colloquy.

Citing Wade v. Hunter, Defendant argued that "[the second judge's] instruction to defense counsel to ascertain whether [Defendant] consented to his trial being completed by a judge who did not preside over the commencement of his trial glossed over all of [Defendant's] legitimate interests in having his trial completed by [the first judge] or terminated" and violated Defendant's valued right to have his trial completed by a particular tribunal. 336 U.S. 684, 689 (1949). Defendant asserted that he "was entitled to have all of his options presented to him, including whether he knew his consent would arguably waive any possible double jeopardy protection under the

9

federal and state constitutions." Therefore, Defendant maintained, his consent to "continue" trial with the second judge was "invalid as a matter of law" because the district court did not obtain his knowing, intelligent, and voluntary consent to "continue" trial with an on-the-record colloquy.

The State countered that Defendant waived any objection to having his bench trial proceed before the second judge. The State additionally asserted there was no requirement that the district court obtain Defendant's knowing, intelligent, and voluntary consent to the second judge "completing the trial" because, as putatively addressed in <u>Fleming</u>, when a new judge appeared mid-evidence to preside over Defendant's OVUII bench trial, Defendant's failure to raise an objection to his trial "continuing" under the second judge was waived.

Further, the State observed that Defendant's "counsel explicitly consented to the trial continuing under [the second judge]." Additionally, the State contended: "[t]here is no . . . constitutional provision providing the right not to have a different judge take over a bench trial," thus a defendant has no right "to the same judge presiding over a defendant's entire bench trial[.]" With "the substitution of [the second judge]," the State claimed that "it was unnecessary to start the trial from scratch," and it was "well established that defendants do

10

not have a right to be tried by any particular judge."

The ICA affirmed the district court. Citing in part to Fleming as instructive, the ICA concluded "that the district court was not wrong in continuing the trial with a substitute judge, and in doing so without conducting an on-the-record colloquy."

We accepted Defendant's application for writ of certiorari.

### III. STANDARDS OF REVIEW

#### A. Plain Error

"This court will consider issues that have not been preserved below and raised on appeal when necessary to serve the ends of justice." State v. Hernandez, 143 Hawai'i 501, 512, 431 P.3d 1274, 1285 (2018) (citations omitted). This court may recognize plain error when the error committed affects the substantial rights of the defendant. See HRPP Rule 52(b) (2000) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

"It is firmly established that the relevant inquiry when evaluating whether a trial court's plain error may be noticed is whether the error affected substantial rights." State v. Ui, 142 Hawai'i 287, 297, 418 P.3d 628, 638 (2018) (cleaned up).

11

## B.   Constitutional Rights

We review questions of constitutional law de novo, under the right/wrong standard.  State v. Tran, 154 Hawai'i 211, 217, 549 P.3d 296, 302 (2024).  In doing so, we "exercis[e] our own independent constitutional judgment based on the facts of the case."  State v. Sing, 154 Hawai'i 377, 383, 550 P.3d 1235, 1241 (2024) (quotation and citation omitted).

### IV.   DISCUSSION

### A.   Defendant's double jeopardy rights were violated.

Defendant contends that the ICA erred: (1) in affirming that the district court did not violate his rights against double jeopardy; and (2) affirming the district court's proceeding after the first judge left, without any showing of manifest necessity and without Defendant's knowing, intelligent, and voluntary consent by and through an on-the-record colloquy.

The State repeats that double jeopardy was not an issue in Defendant's prosecution, as "there was no termination of the trial due to [Defendant's] consent to continuing the trial with [the second judge]."  There was "but one prosecution, and one trial, resulting in one conviction[,]" the State argues, and thus, Defendant was not subjected to multiple prosecutions for the same offense.

Here, Defendant's first raised issue is dispositive.  We

12

hold that the district court plainly erred when it "continued" Defendant's bench trial before the second judge in violation of Defendant's constitutional rights barring double jeopardy.

Article I, section 10 of our state constitution provides that "[n]o person shall be . . . subject for the same offense to be twice put in jeopardy[.]"  Haw. Const. art. I, § 10.

The protection of our double jeopardy clause recognizes that the state

> with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Green v. United States, 355 U.S. 184, 187-88 (1957) (quoted in State v. Moriwake, 65 Haw. 47, 51, 647 P.2d 705, 709 (1982)). See also State v. Quitog, 85 Hawai'i 128, 140, 938 P.2d 559, 571 (1997) (noting that the double jeopardy clause does not allow the state "to make repeated attempts to convict an individual for an alleged offense, since the constitutional prohibition against double jeopardy was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense" (cleaned up)).

A defendant has a "valued right" to "have [their] trial completed by a particular tribunal" before which trial has begun.  Wade, 336 U.S. at 689.  "When a trial ends without a

13

judgment, a defendant's constitutional right to have his trial completed by a particular tribunal still exists." State v. Lam, 75 Haw. 195, 199, 857 P.2d 585, 588 (1993), overruled on other grounds by State v. Wilmer, 97 Hawai'i 238, 35 P.3d 755 (2001) (cleaned up). See also Arizona v. Washington, 434 U.S. 497, 503-05 (1978).

As this court has repeated, the prohibition against double jeopardy is not implicated until jeopardy attaches. Moriwake, 65 Haw. at 51, 647 P.2d at 709 (citing Serfass v. United States, 420 U.S. 377, 388 (1975)). Attachment of jeopardy in a jury trial occurs when the jury is empaneled and sworn in, but in a bench trial, with the judge serving as the sole trier of fact, jeopardy attaches when the court begins to hear evidence. Serfass, 420 U.S. at 388; see also State v. Ferreira, 68 Haw. 238, 242, 709 P.2d 607, 610 (1985).

Here, the first judge heard testimonial evidence from the MPD sergeant. No party disputes that jeopardy attached then. The second judge also recognized that jeopardy had attached during Defendant's bench trial before the first judge. But the first judge was elevated to the circuit court bench before entering judgment on Defendant's criminal liability for OVUII. When the second judge was assigned to Defendant's case, the State appropriately raised concerns about "continuing" with the

14

bench trial given the arrival of a new trier of fact.

When the first judge departed Defendant's bench trial mid-evidence, that judge discharged herself as that trial's sole trier of fact. The second judge, upon his appearance, should have considered a mistrial or an alternative and appropriate concluding order in those proceedings to give procedural finality to this unusual, premature departure of the trier of fact from Defendant's bench trial.[9] Instead, the second judge, apparently and understandably relying on Fleming, erroneously acted as an entirely new trier of fact and "continued" Defendant's first bench trial.

The record does not support the State's contention that double jeopardy rights were not at stake because Defendant was prosecuted in a single bench trial. Indeed, the DPA, at the moment the second judge appeared, explicitly expressed "legitimate concerns regarding proceeding" with the changing of the trier of fact "at this point." However, the State did not move for a mistrial. And the second judge did not squarely address the problem of jeopardy after apparently construing Fleming as authorizing a new fact-finder judge to preside over a

---

[9]    "A mistrial is properly declared and retrial is not barred by the defendant's right against double jeopardy where the defendant consented to the mistrial or there was manifest necessity for the mistrial." Wilmer, 97 Hawai'i at 242-43, 35 P.3d at 759-60 (citing to Quitog, 85 Hawai'i at 142, 938 P.2d at 573; and HRS § 701-110(4)).

"continued trial," which had initially started before a different fact-finder judge.

The second judge noted that in <u>Fleming</u>,

> the ICA also went on to say that they're not going to recognize plain error because the judge that was stepping in stated on the record, like I am now, certifying that she had become familiar with all of the proceedings leading up to the continued trial.  So, under [those] circumstances, the ICA affirmed the conviction that occurred in that case.

But this misplaced reliance on <u>Fleming</u> caused the district court to overlook that HRPP Rule 25(a) plainly provides for a judge substitution in criminal <u>jury</u> trials only, not bench trials.

Our double jeopardy precedent reinforces the principles of fair trials and judicial integrity underlying the constitutional protection.  <u>E.g.</u>, <u>State v. Rogan</u>, 91 Hawai'i 405, 423, 984 P.2d 1231, 1249 (1999) (addressing egregious prosecutorial misconduct barring reprosecution after a mistrial).  And the U.S. Supreme Court in <u>Crist v. Bretz</u> explained what the conclusion of a criminal trial by a "particular tribunal" meant:

> The reason for holding that jeopardy attaches when the jury is empaneled and sworn lies in the need <u>to protect the interest of an accused in retaining a chosen jury</u>.  That interest was described in [<u>Wade</u>] as a defendant's "valued right to have his trial completed <u>by a particular tribunal</u>."  336 U.S.[] at 689.  It is an interest with roots deep in the historic development of trial by jury in the Anglo-American system of criminal justice.  <u>Throughout that history there ran a strong tradition that once banded together a jury should not be discharged until it had completed its solemn task of announcing a verdict</u>.

437 U.S. 28, 35-36 (1978) (cleaned up) (emphases added).

In the present case, the first judge's mid-evidence exit

16

during Defendant's first bench trial improperly ended those proceedings without the first trier of fact completing their solemn task of determining Defendant's criminal liability. Crist, 437 U.S. at 36. When a trial ends without a judgment, a defendant's constitutional right to have their trial completed by a particular tribunal does not disappear. Quitog, 85 Hawai'i at 141, 938 P.2d at 572.

Here, there were two distinct triers of fact. With the departure of the first judge after jeopardy attached in Defendant's first trial, but prior to entry of a judgment, Defendant's right to have his trial concluded by a particular tribunal was endangered. The second judge should have immediately examined whether Defendant's bench trial, begun before the first judge, should have been properly concluded with a mistrial or dismissal order. Instead, when the second judge "continued" Defendant's bench trial, that judge presided as a second tribunal. Defendant was tried for the same OVUII offense, with half of the State's evidence presented live to the second trier of fact, and convicted by the second judge in violation of Defendant's double jeopardy protections.

To the extent that the ICA's prior decision in Fleming sanctioned the second judge's appearance as a permissible "substitution" in place of the first judge in the "continuation"

17

of Defendant's bench trial, reliance on Fleming obscured the violation of Defendant's double jeopardy rights. Fleming rightly confirmed that HRPP Rule 25(a) plainly applies to judicial substitutions in criminal jury trials. Fleming, No. CAAP-15-0000772, at *8. But Fleming cannot sanction the mid-evidence replacement of a judge in a criminal bench trial where the judge is serving as the sole trier of fact, even if the second trier of fact has reviewed all of the records, files, and evidence presented earlier in the case. The ICA's hypothetical consideration in Fleming of judicial substitutions in a criminal bench trial during the taking of evidence mid-trial, to the extent it may have been construed as precedent by the district court, is hereby overruled.

Based on the facts and circumstances of this case, Defendant was denied his constitutionally protected right to have his OVUII bench trial concluded by the first judge, the first tribunal, or to have a proper mistrial declared. Defendant's trial and conviction by the second judge occurred after Defendant's prosecution for the same OVUII offense. We hold that the ICA improperly affirmed the district court's amended judgment because Defendant's second bench trial violated his double jeopardy protections.

**B.    Defendant had no opportunity to consent to or oppose the termination of his first bench trial.**

Both the State and Defendant suggest that the district court's proceedings provided Defendant with an opportunity to consent to "continue" his bench trial before the second judge. The State asserts that pursuant to this court's Quitog decision, Defendant's failure to raise double jeopardy at trial effectively waived those protections.  And Defendant's argument on appeal suggests that he could have waived his double jeopardy protections had the second judge conducted an on-the-record colloquy to obtain and confirm Defendant's knowing, intelligent, and voluntary consent to "continue" with the second judge presiding over his bench trial.

We respectfully disagree with these contentions.

Our case law makes clear that in the absence of manifest necessity, a defendant's consent to a mistrial is required in order to reprosecute the defendant for the same offense.

In State v. Pulawa, we recognized that the threshold question in determining if a criminal defendant can be retried after a mistrial is whether the defendant consented to the mistrial order, for "[w]here a mistrial is declared without the consent of the defendant, and there is an absence of manifest necessity for the mistrial, a retrial will be barred by double jeopardy."  58 Haw. 377, 379, 569 P.2d 900, 903 (1977)

19

(overruled on other grounds by Rogan, 91 Hawai'i at 423 n.10,
984 P.2d at 1249 n.10) (citations omitted).

In State v. Miyazaki, we observed:

> The Pulawa rule that double jeopardy rights can be deemed
> waived whenever a defendant consents to a prosecution
> mistrial motion is based on decisions of the United States
> Supreme Court in Lee v. United States, 432 U.S. 23 (1977);
> United States v. Dinitz, 424 U.S. 600 (1976); and United
> States v. Jorn, 400 U.S. 470 (1971) and is a rule that has
> been applied in other jurisdictions. . . . Of nearly
> universal application is the rule that double jeopardy
> rights are deemed waived when a defendant successfully
> moves for a mistrial.

64 Haw. 611, 618, 645 P.2d 1340, 1346 (1982) (emphasis added).

See also Wilmer, 97 Hawai'i at 242-43, 35 P.3d at 759-60

(reiterating that "[a] mistrial is properly declared and retrial

is not barred by the defendant's right against double jeopardy

where the defendant consented to the mistrial or there was

manifest necessity for the mistrial." (Emphasis added.)).

In Jorn, the U.S. Supreme Court made clear that:

> the conclusion that "jeopardy attaches" when the trial
> commences expresses a judgment that the constitutional
> policies underpinning the Fifth Amendment's guarantee are
> implicated at that point in the proceedings. The question
> remains, however, in what circumstances retrial is to be
> precluded when the initial proceedings are aborted prior to
> verdict without the defendant's consent.

400 U.S. at 480 (emphasis added). See also Green, 355 U.S. at

188 (when "a defendant is placed in jeopardy once he is put to

trial before a jury so that if the jury is discharged without

his consent[,] he cannot be tried again." (Emphasis added.)).

In Quitog, we noted that a defendant's consent to a

20

mistrial may be explicit or implicit.  85 Hawai'i at 142-43, 938 P.2d at 573-74.  As we explained in Pulawa, a defendant's consent to a mistrial, which removes the barrier to reprosecution, "is consistent with the double jeopardy consideration that the defendant should 'retain[ primary control over the course to be followed in the event of [judicial or prosecutorial] error.'"  58 Haw. at 382, 569 P.2d at 904 (quoting Dinitz, 424 U.S. at 609)).

In the present case, after the first judge withdrew from Defendant's bench trial during the State's case-in-chief and before the first judge reached a judgment, the State raised its concerns about a mid-trial substitution of the trier of fact.  The DPA suggested that the court might consider a possible mistrial as an option.  At that point, the second judge should have assessed on the record whether a mistrial was required to properly terminate Defendant's bench trial before the first tribunal.  Instead, the second judge asked defense counsel if "[Defendant] has any objections to the Court presiding over this continued trial."  (Emphasis added.)  Defense counsel responded, "We have no objection to you presiding and continuing this trial."  (Emphasis added.)

To the extent the ICA determined that Defendant's constitutional rights were not violated under the facts and

21

circumstances of this case, we respectfully disagree.

## C. Disposition

Defendant asks that his conviction be vacated and the case be remanded to the district court for entry of an order dismissing the charge with prejudice.

Again, when a trial ends without a judgment, a defendant's constitutional right to have his trial completed by a particular tribunal still exists, subject to a proper mistrial being declared. Lam, 75 Haw. at 199-201, 857 P.2d at 588-89, overruled on other grounds by Wilmer, supra.

As stated, the parties do not dispute that jeopardy attached when the first judge heard testimony from the MPD sergeant. Defendant's first bench trial was not properly terminated but effectively ended without a judgment of guilt or acquittal when the first judge departed the first trial. And the second trial, which prosecuted Defendant for the same OVUII offense before a second fact-finder judge, violated Defendant's double jeopardy protections.

Upon vacatur of Defendant's unlawful conviction by the second judge, jeopardy from the first trial remains attached. And reprosecution of Defendant for this same offense is barred by double jeopardy.

## V. CONCLUSION

For these reasons, we vacate the ICA's April 17, 2025 Judgment on Appeal; vacate the district court's May 3, 2022 amended judgment; and remand this case to the district court to enter an order dismissing the charge with prejudice.

Hayden Aluli
for petitioner

Richard B. Rost
for respondent

/s/ Vladimir P. Devens

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Lisa M. Ginoza

/s/ Peter K. Kubota

